Murray D. Feldman (ISB #4097)
Alexandra S. Grande (ISB #9566)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
E-mail:  mfeldman@hollandhart.com
        asgrande@hollandhart.com

Attorneys for Plaintiff-Petitioner Marcelino Guadarrama Ayala

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE APPLICATION OF: | |
| | Case No. _____ |
| MARCELINO GUADARRAMA AYALA, | |
| Ixtapan de la Sal, Mexico, | **VERIFIED COMPLAINT AND** |
| | **PETITION FOR RETURN OF CHILD** |
| Plaintiff-Petitioner, | **PURSUANT TO THE HAGUE** |
| | **CONVENTION** |
| v. | |
| | |
| DAISY ELIZABETH AYALA AYALA, | |
| Nampa, Idaho, United States, | |
| | |
| Defendant-Respondent. | |

## Introduction

1. Plaintiff-Petitioner Marcelino Guadarrama Ayala ("Mr. Guadarrama" or "Petitioner") is a resident and citizen of the United States of Mexico ("Mexico"). He brings this action to secure the return to Mexico of his seven-year-old daughter A.G.A.[1] (or the "Child"), who has, without Petitioner's consent or acquiescence, been wrongfully removed to the United States and retained in the District of Idaho by the Child's mother, Respondent Daisy Elizabeth Ayala Ayala.

2. Mr. Guadarrama brings this Petition pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Convention")[2] and the International Child Abduction Remedies Act ("ICARA"),[3] the federal legislation implementing the Convention in the United States.

3. The Convention entered into force between the United States of America and Mexico on October 1, 1999, and remains in force at all relevant times.[4] The purposes of the Convention are to secure the immediate return of a child wrongfully removed or retained in any Contracting State, and to ensure that the right of custody and access under the law of one Contracting State is respected in other Contracting States. *See* Convention, art. 1. The

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a) and District Local Rule Civ. 5.5(a), the Child's full name and birth date are not included in this Petition and have been redacted from any supporting materials provided by Petitioner.

[2] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.A. at 98, reprinted in 51 Fed. Reg. 10493 (1986). The Convention was enacted at The Hague on October 28, 1980. The Convention is available on Westlaw at 1988 WL 411501.

[3] 22 U.S.C. §§ 9001 – 9011 (1995).

[4] The United States and Mexico are signatories to the Hague Convention; the United States ratified the treaty on July 1, 1988, and Mexico's entry into the Convention was effective with the United States on October 1, 1991. *See* https://travel.state.gov/content/childabduction/en/country/hague-party-countries.html.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 1**

Convention recognizes the urgent nature of these proceedings and anticipates an expedited hearing of Convention cases. *See* Convention, art. 11. The Convention is not meant to decide the "underlying merits of a custody dispute but whether a child should be returned to a country for custody proceedings under that country's domestic law." *Papakosmas v. Papakosmas*, 483 F.3d 617, 621 (9th Cir. 2007).

4. Under the Convention the removal or retention of a child is "wrongful" when:

    (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the Child was habitually resident immediately before the removal or retention; and

    (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3.

5. In considering a petition for return, the Convention authorizes a federal district court to determine the merits of the wrongful removal or retention claim, but does not permit the district court to consider the merits of any underlying custody dispute. *See Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001), *modified in nonrelevant part by Monasky v. Taglieri*, 140 S. Ct. 719 (2020).

6. The United States Court of Appeals for the Ninth Circuit has instructed that a court applying Article 3 of the Convention must answer the following four questions:

    (a) When did the removal or retention at issue take place?

    (b) Immediately prior to the removal or retention, in which state was the child habitually resident?

    (c) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence?

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 2**

  (d) Was the petitioner exercising those rights at the time of the removal or retention?

*Mozes*, 239 F.3d at 1070.

## Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction of courts under the Convention) and 28 U.S.C § 1331 (federal question jurisdiction).

8. Venue in this Court is proper pursuant to 22 U.S.C. § 9003(b) (petitions under the Convention) and 28 U.S.C. § 1391(b) because the Child, on information and belief, is currently located in or around Nampa, Idaho.

## Statement of Facts

9. Petitioner Guadarrama and Respondent are the parents of a seven-year-old daughter, A.G.A. Both Petitioner and Respondent are citizens of Mexico, both were born there. Neither holds United States or any other citizenship. A.G.A. is a citizen of Mexico by virtue of her birth in Ixtapan de la Sol, Mexico, and her habitual residence there prior to her removal by the Respondent. Respondent began residing with the Petitioner in Ixtapan de la Sal, Mexico in 2013. Following the birth of their daughter A.G.A. in mid-2013, Petitioner and Respondent were married in a church ceremony on January 28, 2017 when A.G.A. was three years old. A true and correct copy of the church marriage certificate from the parish of St. Peter the Apostle in Tecomatepec, Mexico,[5] is attached hereto as Exhibit F.

---

[5] Under Article 30 of the Convention, "[a]ny application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States." This provision applies to Mr. Guadarrama's Hague Convention Return Application and the documents appended to that Application or provided by the U.S. Department of State or Mexican central authority, viz. the items also attached to this Petition as

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 3**

10. Petitioner was born in, and is a citizen and resident of Mexico. Mr. Guadarrama currently works in the drinking (bottled) water supply business in Mexico. Respondent was born in Tenancinga, Mexico in 1998, and is a citizen of Mexico. A.G.A. is a citizen of Mexico with her habitual residence in Ixtapan de la Sal, Mexico. Prior to the events underlying this Petition, A.G.A. lived continuously in Mexico and attended primary school there at Rafael Ramirez school where she was in the first grade, completing her term in June 2020. A copy of A.G.A.'s most recent school grade report is attached as Exhibit E. A.G.A. never resided outside of, or even traveled outside of, Mexico prior to her wrongful removal by Respondent that is the subject of this Petition.

11. Petitioner and Respondent were never legally married in a civil ceremony in Mexico. Nonetheless, as the biological father of A.G.A., Petitioner had rights of custody and care of the Child under Mexican law and doctrine of *patria potestas* under Mexican domestic law that governs "the relationship between parents and their children, conferring upon both parents, jointly, the broadest possible right over the children's care, custody, and well-being." *Rodriguez v. Sieler*, 2012 WL 5430369, at *4 (D. Mont. No. 7, 2012); *see also* attached Exhibit G (certified English translation of Civil Code of the State of Mexico provisions concerning parental rights and responsibilities).

12. Petitioner and Respondent lived together as husband and wife, as recognized by their subsequent church marriage in 2017, from the time before A.G.A. was born and following her birth. While Respondent was pregnant with A.G.A., Mr. Guadarrama traveled to the United States for employment opportunities, providing money for the support of Respondent and their future child. Mr. Guadarrama returned to Mexico following the Child's birth, and

---

Exhibits B through H, as documented in Exhibit A (transmittal email from U.S. Central Authority, U.S. Department of State, to counsel for Mr. Guadarrama).

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 4**

Mr. Guadarrama, Respondent, and A.G.A. all lived together in Mr. Guadarrama's house as a family.

13. Following their church marriage in 2017, Mr. Guadarrama again went to the United States for employment opportunities, working as a farm laborer and farm hand in Melba, Idaho. During the time he was in the United States, he continued to send money home to Mexico for the support of Respondent and their child, A.G.A. The Respondent and A.G.A. continued to dwell in the family home in Mexico during this time, spending their days in the family home and evenings at Mr. Guadarrama's mother's (i.e. A.G.A.'s maternal grandmother's) home.

14. In approximately September 2019, Mr. Guadarrama returned to Mexico from the United States. Mr. Guadarrama, Respondent, and A.G.A. continued to live together as a family in their family home in Mexico.

15. On approximately June 19, 2020, following a disagreement between Petitioner and Respondent, the Petitioner left the family home with A.G.A., who was crying, forcibly taking her away from the family home. While Petitioner and Respondent had discussed possibly separating due to differences between the two, Petitioner never authorized or agreed that A.G.A. would be removed from Mexico, or that his inherent parental rights of *patria potestas* under Mexican domestic law would be infringed or affected, or that he would not be able to exercise those rights. Instead, Petitioner and Respondent specifically discussed Mr. Guadarrama having visitation (joint custody) with A.G.A. during the weekends and during the week if the parents separated.

16. On June 19, 2020, the Respondent told Petitioner that she was leaving to be with her mother in Ixtapan de la Sal, Mexico (the same town where Petitioner, Respondent, and A.G.A. had all resided during A.G.A.'s lifetime, except for Petitioner's time working in the

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 5**

United States while sending support money back to Respondent and A.G.A.), and that she would speak with the Petitioner again on Monday, June 22, 2020.

17. However, Mr. Guadarrama did not hear from Respondent on Monday, June 22, 2020, and became concerned. He called Respondent many times but she did not answer. He then called Respondent's mother, who told him that Respondent was in Toluca working. Mr. Guadarrama indicated to Respondent's mother that he needed to talk with the Respondent about A.G.A. The Respondent's mother indicated that Respondent was going to call Mr. Guadarrama on Tuesday, June 23, 2020.

18. The Respondent did call Mr. Guadarrama on June 23, 2020, and at that time told him that she had taken A.G.A. to the United States and that she had not previously provided any indication or warning to Mr. Guadarrama because she did not want him to try to prevent her taking A.G.A. to the United States.

19. Upon learning of Respondent's removal of A.G.A. to the United States, Mr. Guadarrama immediately made efforts to secure the return of his daughter, A.G.A., to Mexico. He attempted to contact counsel in Mexico, and he filled out the applicable Convention application form for the return of a minor child. He returned those forms to the Office of the Rights of the Family in Mexico, the central authority in Mexico for administration of the Convention for Mexican citizens seeking the return of their child to Mexico from another contracting state under the Convention. *See* attached Exhibits B, C, & D.

20. On or around July 13, 2020, Mr. Guadarrama prepared, submitted, and had filed with the municipal offices in Ixtapan de la Sal, Mexico, a sworn public declaration that Respondent had abandoned the family home and taken A.G.A. with her to the United States. A copy of the original Spanish version of that declaration is attached as Exhibit I.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 6**

21. Mr. Guadarrama completed, signed, and submitted the Hague Return Application on July 18, 2020, less than one month after learning of the removal of A.G.A. by Respondent to the United States.  In the course of conversations with Respondent, Mr. Guadarrama learned that the Respondent and A.G.A. were living in Nampa, Idaho, with family of the Respondent.

22. After submitting his Hague Application for Return to the Mexican Central Authority, the Mexican Central Authority forwarded that application to the United States Department of State, Office of Children's Issues, the central authority in the United States for the Hague Abduction Convention.

23. On September 16, 2020, the Department of State sent a voluntary return letter (in both English and Spanish language versions) to Respondent at her location in Nampa, "writing to inform [her] that the Government of Mexico has forwarded to us an application from [Petitioner] who is seeking assistance under the Hague Convention on the civil aspects of international child abduction and returning [A.G.A.] to Mexico."  *See* attached Exhibit H (U.S. Dep't of State voluntary return letter (English and Spanish versions)) (Sept. 16, 2020).

24. In that letter, the Department of State requested "whether you [Respondent] are interested in working with [Petitioner] and any professionals which you may find helpful such as an attorney, mediator, and/or social worker to facilitate the resolution of the family's conflict without engaging in litigation."  Further, the letter indicated that "[i]f we have not received your response by September 30, 2020, or if you elect not to return the child to Mexico and/or come to some resolution that is mutually agreeable to you and [Petitioner], then we, as the U.S. Central Authority, will be obligated under Article 7(f) of the Convention to continue processing the application and to facilitate the initial of judicial proceedings by [Petitioner] to have a court in

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 7**

the United States determine [A.G.A.]'s country of habitual residence and where custody should be decided.

25. Respondent did not provide a response to the U.S. Department of State concerning the request and the voluntary return letter, and did not reach any arrangements or agreements with Petitioner for the return of A.G.A. to Mexico.

26. The U.S. Central Authority therefore continued to process Petitioner's application for return and, through the Hague Convention attorney network,[6] helped facilitate Mr. Guadarrama's engagement of legal counsel to commence these proceedings for the return of A.G.A. to Mexico.

27. During the time that Respondent has resided in the United States with A.G.A. since the removal from Mexico, Respondent has limited the ability of Mr. Guadarrama to communicate and speak with A.G.A. and has interfered with and breached the rights of custody and care that Petitioner has as concerns A.G.A. under the doctrine of *patria potestas* and otherwise and the parental rights provided to him under the law of Mexico.

### First Claim for Relief
(Return Remedy Under the Convention; Removal and Wrongful Retention of the Child by Respondent)

28. Mr. Guadarrama incorporates paragraphs 1 through 27.

29. The Convention applies to any child who is under 16 years of age and was habitually resident in a Contracting State immediately before being wrongfully removed and retained. Convention, art. 4. A.G.A. is currently seven years old and was that age at the time of the wrongful removal.

---

[6] *See* https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/for-providers/attorneys/FAQ-hague-attorney-network.html.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 8**

30. As set forth above, on or around June 22, 2020, the Respondent wrongfully removed and retained A.G.A. outside of her habitual residence (Mexico), within the meaning of Article 3 of the Convention and continues to wrongfully retain the Child in the State of Idaho in violation of the Convention and ICARA and despite Petitioner's repeated requests and efforts to have the Child returned to Mexico, including the issuance of a voluntary return letter to Respondent by the United States Department of State.

31. On information and belief, the wrongful removal occurred on or about June 22, 2020 and the wrongful retention commenced when Respondent informed Mr. Guadarrama on June 23, 2020 that she had taken A.G.A. to the United States and refused to return the Child to her habitual residence in Mexico.

32. This Petition is filed less than one year from Respondent's wrongful removal and retention of the Child.

33. Upon information and belief, Respondent is presently keeping the Child at a location in Nampa, Idaho.

34. Petitioner has never acquiesced or consented to Respondent's retention of the Child outside of Mexico in the United States contrary to the Convention and his rights of custody and care under Mexican domestic law as the Child's father.

35. Specifically, Respondent's removal and retention of the Child outside of Mexico is wrongful within the meaning of Article 3 of the Convention because:

> (a) It is in violation of Mr. Guadarrama's rights of care and custody as established by Mexican law;
>
> (b) At the time of Respondent's removal of A.G.A. from Mexico and Respondent's wrongful retention of A.G.A. outside of Mexico, Petitioner was actually exercising his rights of custody and care within the meaning of Articles 3 and 5 of the Convention and, but

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 9**

for Respondent's removal and wrongful retention of the Child, Petitioner would have continued to exercise those rights; and

(c) The Child was habitually resident in Mexico within the meaning of Article 3 of the Convention immediately before her removal and wrongful retention outside of Mexico by Respondent.

## Relief Requested

WHEREFORE, Petitioner Marcelino Guadarrama Ayala respectfully requests the following relief:

A. An order pursuant to and consistent with Article 12 of the Convention in favor of Petitioner and ordering the return of A.G.A. to her habitual residence in the United States of Mexico;

B. An order requiring that Respondent pay Petitioner's expenses and costs, including travel expenses to return A.G.A. to her habitual residence in Mexico pursuant to Article 23 of the Convention and 22 U.S.C. § 9001, *et seq.*, and all legal costs and fees pursuant to 22 U.S.C. § 9001, *et seq.*, and Article 26 of the Convention; and

C. Such further relief as is just and that this Court may require.

DATED this 29th day of January, 2021.

HOLLAND & HART LLP

By /s/Alexandra S. Grande
Murray D. Feldman, of the firm
Alexandra S. Grande, for the firm

Attorneys for Plaintiff-Petitioner

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 10**

## VERIFICATION

I, Marcelino Guadarrama Ayala, declare under penalty of perjury under the laws of the United States that I am the Plaintiff-Petitioner in the action set out in the foregoing Complaint and Petition for Return of Child to Petitioner, that I have read the Complaint and Petition and Exhibits attached thereto, know the contents thereof, and that the facts asserted therein are true and correct to the best of my knowledge.

EXECUTED this 25 day of January 2021 at Ixtapan de la Sal, Mexico.

*Marcelino Guadarrama*
Marcelino Guadarrama Ayala

15850384_v2